# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOSHUA GRAZIOSI | CIVIL ACTION NO. 3:07-CV-2351 |
| Plaintiff, | |
| v. | (JUDGE CAPUTO) |
| JOYCE'S CAFÉ, et al., | |
| Defendants. | |

## **MEMORANDUM**

Three motions for summary judgement are presently before the Court from: (1) Defendant Jamie Barrett, (2) Defendants City of Scranton and Scranton Police Department (the "Municipal Defendants"), and (3) Defendant Nathan Barrett. For the reasons set forth in greater detail below, the Court will grant each of the Defendants' motions.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

## **BACKGROUND**

The undisputed facts of this case are as follows.[1]

---

[1] Middle District of Pennsylvania Local Rule of Court 56.1 directs parties filing motions for summary judgment to accompany such motions with "a separate, short and concise statement of the material facts. . . as to which the moving party contends there is no genuine issue to be tried." L.R. 56.1. Each of the Defendants filed such a statement along with their current motions for summary judgment. (Docs. 30, 34, 38.) Local Rule 56.1 also instructs parties opposing a motion for summary judgment to file "a separate, short and concise statement of the materials facts . . . as to which it is contended that there exists a genuine issue to be tried." L.R. 56.1. Plaintiff did not include any counter statement of facts when filing his opposition to the current motions. The local rule concludes by stating that "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party." L.R. 56.1. Thus, as Plaintiff has provided no statement controverting those facts

On December 31, 2005, at approximately 2:00 a.m., Plaintiff Joshua Graziosi ("Plaintiff") drove his car to Defendant Joyce's Café ("Joyce's) with his friend Tim Gretz ("Mr. Gretz"). (Def. J. Barrett SOF, Doc. 30 ¶ 2; Def. Scranton SOF, Doc. 34 ¶ 1.) Prior to driving to Joyce's the Plaintiff, who was a minor at the time, had consumed three (3) cans of beer. (Doc. 30 ¶ 2.) The Plaintiff and Mr. Gretz drove to Joyce's in order to continue their consumption of alcoholic beverages and to look for a phone and jewelry that Plaintiff had lost at Joyce's during a December 27, 2005 visit to Joyce's Café. (Doc. 30 ¶ 3-4; Doc. 34 ¶ 2.) The Plaintiff and Mr. Gretz arrived at Joyce's and found it closed. (Doc. 30 ¶ 5; Doc. 34 ¶ 3.) After unsuccessfully attempting to enter Joyce's Café, the Plaintiff publically urinated in some bushes on an unidentified person's private property adjoining Joyce's Café. (Doc. 30 ¶ 6; Doc. 34 ¶ 4.) At this time, Mr. Gretz produced a paint-filled marker and began vandalizing the front door of Joyce's Café. (Doc. 30 ¶ 7; Doc. 34 ¶ 5.) After urinating in the bushes, and while Mr. Gretz continued to deface Joyce's front door, the Plaintiff walked to the back of the Joyce's Café building. (Doc. 30 ¶ 8.) Defendant Nathan Barrett, who was working as a bartender at Joyce's, opened the front door, yelled at and attempted to apprehend Mr. Gretz. (Doc. 34 ¶ 6.) The Plaintiff heard yelling and saw Mr. Gretz being chased by a man who had come out of Joyce's. (Doc. 30 ¶¶ 9-10.) Unable to apprehend Mr. Gretz, Defendant Nathan Barrett confronted the Plaintiff, who had picked up a stick after watching Mr. Gretz flee and observing Nathan Barrett's anger. (Doc. 30 ¶¶ 14-19; Doc. 34 ¶¶ 7-8.)

---

set forth by the various Defendants, the Court deems those facts set forth in the moving Defendants' statements to be admitted as true by Plaintiff.

Defendant Nathan Barrett approached and shook the Plaintiff by his jacket. (Doc. 30 ¶ 9; Doc. 34 ¶ 21.) After the two men came into contact, Plaintiff was struck in the face by Defendant Nathan Barrett. (Doc. 30 ¶ 28.) During the course of the ensuing fight, Defendant Nathan Barrett kicked or punched the Plaintiff in the area of his head/face. (Doc. 30 ¶ 33.) Also, at some point during the course of the altercation, a razor blade that Plaintiff had purposefully carried to use as a weapon, was either removed from or fell out of Plaintiff's jacket. (Doc. 30 ¶¶ 22, 23, 36; Doc. 34 ¶ 8.)

Defendant Jamie Barrett is a detective in the Scranton City police department and Defendant Nathan Barrett's brother. (Doc. 34 ¶ 10.) At the time of the incident, Jamie Barrett resided on the second floor of the Joyce's Café building and, upon hearing the noise from the altercation, went outside to the scene of the fight. (*Id.*) Defendant Jamie Barrett was off duty at the time of this incident, was not in uniform, and did not identify himself as a police officer. (Doc.30 ¶ 37; Doc. 34 ¶ 10.) Jamie Barrett did not strike or kick the Plaintiff at any time during the incident and came upon the scene after Plaintiff had already fallen to the ground. (Doc. 30 ¶¶ 28-29, 34.) Plaintiff believes that Jamie Barrett held him to the ground until the police and an ambulance could arrive at the scene. (Doc. 30 ¶ 37.)

Plaintiff was injured in the altercation, suffering a broken nose and dislocated jaw. (Doc. 30 ¶ 43; Doc. 34 ¶ 12.) Plaintiff was also arrested in connection with the events occurring on December 31, 2005. (Doc. 30 ¶ 55; Doc. 34 ¶ 13.) Following a preliminary hearing, the Plaintiff plead guilty to a charge of harassment. (Doc. 30 ¶ 51; Doc. 34 ¶ 14.)

On December 31, 2007, Plaintiff filed his Complaint (Doc. 1) alleging eleven (11) causes of action against the Defendants, including a claim of assault/battery against Defendant Nathan Barrett, claims of malicious prosecution and civil conspiracy against

Defendants Nathan and Jamie T. Barrett.  (Doc 1 ¶¶ 25-40.)  Plaintiff's Complaint also includes a variety of claims against the various Defendants pursuant to 42 U.S.C. § 1983. (*See id.* ¶¶ 41-73.)  Finally, Plaintiff brings a single claim against Defendant Joyce's Café, or its owners, alleging that Joyce's breached its duty to protect its patrons and the public when it hired Defendant Nathan Barrett, allowed Nathan Barrett to become involved in the incident involving Mr. Gretz and Plaintiff, and failed to either restrain Nathan Barrett or warn Plaintiff of Nathan Barrett's alleged violent tendencies.  (*Id.* ¶¶ 74-81.)

Defendants Joyce's Café, Nathan Barrett and Jamie T. Barrett filed their Answer to Plaintiff's Complaint on February 1, 2008.  (Doc. 6.)  Likewise, Defendant Scranton Police Department/City of Scranton filed its Answer to Plaintiff's Complaint on February 21, 2008. (Doc. 11.)  After a case management conference, the Court entered an Order placing the case on a standard case management track and setting a November 1, 2008 deadline for the completion of all discovery and a February 2, 2009 deadline for dispositive motions. (Doc. 21.)  All three of the current motions for summary judgment (Docs. 29, 32, 36) were filed on February 2, 2009, along with corresponding statements of facts (Docs. 30, 34, 38) and briefs in support (Docs. 31, 35, 37).  On March 2, 2009, Plaintiff filed a Memorandum of Law (Doc. 43) in opposition to all three motions for summary judgment, and on March 16, 2009 Scranton Police Department/City of Scranton filed a Reply Brief (Doc. 44).  As the deadline for additional replies to Plaintiff's opposition memorandum has passed, and as the current motions have been thoroughly briefed, the Court finds that the Defendants' motions are currently ripe for disposition.

**LEGAL STANDARD**

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law. Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one. *See id.* at 248. An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party." *Id*.

Where there is a material fact in dispute, the moving party has the initial burden of proving that: (1) there is no genuine issue of material fact; and (2) the moving party is entitled to judgment as a matter of law. *See* CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 2727 (2d ed. 1983). The moving party may present its own evidence or, where the nonmoving party has the burden of proof, simply point out to the Court that "the nonmoving party has failed to make a sufficient showing of an essential element of her case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to the nonmoving party. *See White v. Westinghouse Elec. Co.*, 862 F.2d 56, 59 (3d Cir.

1988). Once the moving party has satisfied its initial burden, the burden shifts to the nonmoving party to either present affirmative evidence supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law. *See Anderson*, 477 U.S. at 256-57.

The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

## DISCUSSION

**A.    Plaintiff's Federal Claims**

### I.    Defendant Jamie T. Barrett

In his Complaint, the Plaintiff asserts that Defendant Jamie Barrett, a member of the Scranton City Police Department, violated the Plaintiff's federal constitutional rights by allowing his brother to use excessive force upon Plaintiff and by conspiring with his brother to have Plaintiff falsely arrested, imprisoned, and prosecuted without probable cause.

On the basis of these allegations, Plaintiff's Complaint asserts several causes of action against Defendant Jamie Barrett. Count IV of Plaintiff's Complaint brings a claim pursuant to 42 U.S.C. § 1983, alleging that Defendant Jamie Barrett falsely arrested and imprisoned Plaintiff in violation of the rights guaranteed to him by the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution. Similarly, Count V of Plaintiff's Complaint alleges that Defendant Jamie Barrett conspired with his brother, Defendant

Nathan Barrett, and officers of the Defendant Scranton Police Department to falsely arrest and imprison Plaintiff. Count VI of Plaintiff's Complaint alleges malicious prosecution against Jamie Barrett pursuant to § 1983, and Count VII alleges that Jamie Barrett conspired with his brother and other Defendants to maliciously prosecute Plaintiff. Counts VIII and IX of Plaintiff's Complaint are also brought pursuant to § 1983 and, respectively, allege that Jamie Barrett employed excessive force and conspired with other Defendants to use excessive force against Plaintiff in violation of the rights guaranteed to Plaintiff by the Fourth and Fourteenth Amendments to the United States Constitution.

In order to state a claim under 42 U.S.C. § 1983, a plaintiff "must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (citing *Parratt v. Taylor*, 451 U.S. 527, 535 (1981)); *see accord Hicks v. Feeney*, 770 F.2d 375, 377 (3d Cir. 1985) ("In any § 1983 action, the court must first make an inquiry to ascertain the presence of the two essential elements to a § 1983 claim: whether the alleged conduct was committed by a person acting under color of state law and whether the conduct deprived a person of rights, privileges or immunities secured by the Constitution or laws of the United States.") "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *West*, 487 U.S. at 49 (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)). "[A] police officer's purely private acts which are not furthered by any actual or purported state authority are not acts under color of state law." *Barna v. City of*

*Perth Amboy*, 42 F.3d 809, 816-817 (citing *Delcambre v. Delcambre*, 635 F.2d 407, 408 (5th Cir. 1981); *D.T. v. Independent School Dist. No. 16*, 894 F.2d 1176 (10th Cir.)).

In the current case, Defendant Jamie Barrett was off duty at the time the altercation occurred between Plaintiff and Defendant Nathan Barrett. Furthermore, the Plaintiff stated in his deposition testimony that Defendant Jamie Barrett was not in uniform, did not speak to the Plaintiff, and did not identify himself to the Plaintiff as a detective or police officer at the time of the incident. (Graziosi Dep. Trans. Pt. 1, Doc. 33, Ex. 1, at 77:3-79:15.) Finally, Plaintiff has produced no evidence that would support a finding that Defendant Jamie Barrett was acting with either actual or purported police authority during or immediately after the altercation between his brother and the Plaintiff. Accordingly, the Court finds that there is no genuine issue of material fact that would allow a reasonable jury to conclude that Defendant Jamie Barrett was acting under color of state law at the time of the incident between Plaintiff and Defendant Nathan Barrett. For this reason, the Court will grant Defendant Jamie Barrett's motion for summary judgment with respect to Counts IV (false arrest/imprisonment), V (conspiracy to falsely arrest/imprison), VIII (excessive force), and IX (conspiracy to use excessive force) brought pursuant to 42 U.S.C. § 1983.

The Court does, however, observe that Defendant Jamie Barrett testified in a preliminary hearing before a Pennsylvania district judge that, after the incident, he spoke with Lenny Ash, another member of the Scranton City Police Department, regarding the progression of the criminal case against Plaintiff. (May 22, 2006 Hearing Trans., Doc. 40, Ex. B, at 28:16-29:7.) The Court believes that this conversation was made possible by Defendant Jamie Barrett's employment with the Scranton City Police Department. For this reason, the Court finds that Defendant Jamie Barrett was operating under "color of law"

when he spoke to Officer Ash and enquired about Plaintiff's criminal case. *See Monroe v. Pape*, 365 U.S. 167, 184 (1961)("Misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken 'under color of' state law."), *overruled on other grounds by Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978); *accord Zelinski v. Pa. State* Police, 108 Fed Appx. 700, 703 (3d Cir. 2004) (quoting *Boneberger v. Plymouth Township,* 132 F.3d 20, 23 (3d Cir. 1997).

As the Court has found that Defendant Jamie Barrett was, in fact, acting under color of law when he spoke to Officer Ash concerning the potential criminal case against Plaintiff, the Court now considers whether Defendant Jamie Barrett's conduct deprived the Plaintiff of rights, privileges or immunities secured by the Constitution or laws of the United States. The Third Circuit Court of Appeals has stated that "[i]n order to state a prima facie case for a section 1983 claim of malicious prosecution, the Plaintiff must establish the elements of the common law tort as it has developed over time." *Hilfirty v. Shipman*, 91 F.3d 573, 579 (3d Cir. 1996) (citing *Lee v. Mihalich*, 847 F.2d 66, 70 (3d Cir. 1988); *McArdle v. Tronetti*, 961 F.2d 1083, 1088 (3d Cir. 1992); *Singleton v. City of New York*, 632 F.2d 185, 195 (2d Cir. 1980)). The Court of Appeals further noted that "[i]n Pennsylvania, like most jurisdictions, a party bringing a malicious prosecution claim must demonstrate that (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; and (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice." *Hilfirty*, 91 F.3d at 579 (citing *Haefner v. Burkey*, 534 Pa. 62 (Pa. 1993); *Lee*, 847 F.2d at 69-70). The Court of

Appeals also noted that

> criminal proceedings are terminated in favor of the accused by
>
> (a) a discharge by a magistrate at a preliminary hearing, or
>
> (b) the refusal of a grand jury to indict, or
>
> (c) the formal abandonment of the proceedings by the public prosecutor, or
>
> (d) the quashing of an indictment or information, or (e) an acquittal, or
>
> (f) a final order in favor of the accused by a trial or appellate court.

*Hilfirty*, 91 F.3d at 579 (quoting Restatement (Second) of Torts § 659 (1976); *Haefner*, 626 A.2d at 521). Of particular relevance to the current case, the Third Circuit Court of Appeals clearly stated that "a prosecutor's decision to withdraw criminal charges pursuant to a compromise with the accused is not considered to be a termination sufficiently favorable to support a malicious prosecution claim." *Hilfirty*, 91 F.3d at 580 (citing *Alianell v. Hoffman*, 176 A. 207 (Pa. 1935)). In short, "only terminations that indicate that the accused is innocent ought to be considered favorable." *Hilfirty*, 91 F.3d at 580 (citing *Restatement (Second) of Torts* § 660 cmt. a; *Taylor v. Gregg*, 36 F.3d 453, 456 (5th Cir. 1994); *Jaffe v. Stone*, 18 Cal. 2d 146 (Cal. 1941).

In the case currently before the Court, the Plaintiff reached an agreement with prosecutors whereby he plead of guilty to a harassment charge in exchange for prosecutors dropping misdemeanor and felony assault charges. (Doc. 30 ¶ 51; Doc. 34 ¶ 14; Graziosi Dep. Trans. Pt. 2, Doc. 33, Ex. 2, at 118:13-119:22.) Based upon this plea agreement, the Court finds that the Plaintiff has failed to establish the essential "favorable outcome" element of his malicious prosecution claim against Defendant Jamie Barrett. Accordingly, the Court will grant Defendant Jamie Barrett's motion for summary judgment with respect to Counts

VI (malicious prosecution) and VII (conspiracy to maliciously prosecute).

## II. Defendant Nathan Barrett

As already discussed in this Memorandum, in order to prevail on his claims brought pursuant to 42 U.S.C. § 1983, Plaintiff "must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West*, 487 U.S. at 48 (citing *Parratt*, 451 U.S. at 535). In the current case, the Plaintiff has produced no evidence that Defendant Nathan Barrett was acting pursuant to any actual or purported state authority at the time of the incident. Thus, the Court finds that no reasonable jury could find that Defendant Nathan Barrett was acting under color of state law at the time of the incident with Plaintiff, and will grant Defendant Nathan Barrett's motion for summary judgment with respect to Counts IV (false arrest/imprisonment), V (conspiracy to falsely arrest/imprison), VI (malicious prosecution) VII (conspiracy to maliciously prosecute), VIII (excessive force), and IX (conspiracy to use excessive force) of Plaintiff's Complaint.

## III. Municipal Defendants

In his Complaint, Plaintiff alleges that the Municipal Defendants violated his the rights guaranteed to him by the United States Constitution. Specifically, Plaintiff alleges that the Municipal Defendants falsely imprisoned Plaintiff, conspired with other Defendants to falsely imprison Plaintiff, employed excessive force against him, and conspired to use excessive force against Plaintiff. Plaintiff also alleges that he suffered a violation of his constitutional rights when the Municipal Defendants (1) failed to "establish, publish, and instill in Police Officers and Detectives the practical meaning of probable cause or reasonable cause for arrests. . .," (2) de-emphasized "the importance of an arrest warrant issued by a Judge or

11

Magistrate, which would act as a buffer between the citizenry and the police. . ., " and (3) failed to take "proper corrective and punitive actions against overreaching police officers. . . . creating the impression that protecting family or friends, in this case Nathan Barrett or Joyce's Café is paramount and triumphs over constitutional rights in all circumstances." (Doc. 1 ¶ 72.)

In his Complaint, Plaintiff alleges that the Municipal Defendants both falsely imprisoned and conspired to falsely imprison him. As this Court has previously noted,

> A claim under § 1983 for false arrest/false imprisonment is grounded in the Fourth Amendment guarantee against unreasonable seizures. *Garcia v. County of Bucks*, 155 F. Supp. 2d 259, 265 (E.D. Pa. 2001) (citing *Groman v. Twp. of Manalapan*, 47 F.3d 628, 636 (3d Cir. 1995)). To maintain his false arrest claims, "a plaintiff must show that the arresting officer lacked probable cause to make the arrest." *Id*. "Probable cause exists when the totality of facts and circumstances are sufficient to warrant an ordinary prudent officer to believe that the party charged has committed an offense." *Id*.

*Kokinda v. Breiner*, 557 F. Supp. 2d 581, 592 (M.D. Pa. 2008) (Caputo, J.). In his deposition in this case, the Plaintiff was asked a series of questions as to whether he felt the arresting officers had probable cause to arrest him following the incident. (*See* Graziosi Dep. Trans. Pt. 2, Doc. 33, Ex. 2, at 110:11-117:23; 140:24-142:7.) In response to these questions, Plaintiff indicated that the arresting officers did nothing wrong, with the possible exception of relying on inaccurate information provided by either Jamie or Nathan Barrett. (*Id.*) Moreover, as already noted in this Memorandum, after his arrest, Plaintiff entered a guilty plea to a charge of harassment in connection with the incident involving Defendant Nathan Barrett. (Doc. 30 ¶ 51; Doc. 34 ¶ 14; Graziosi Dep. Trans. Pt. 2, Doc. 33, Ex. 2, at 118:13-119:22.) Plaintiff also stated in his deposition that he is not aware of any facts that support his allegations that the arresting officers were part of a "group effort" or conspiracy to arrest

and/or imprison Plaintiff. (Graziosi Dep. Trans. Pt. 2, Doc. 33, Ex. 2, at 142:2-143:5.) The Court finds that Plaintiff's guilty plea to the charge of harassment, along with his admissions that (1) the arresting officers had probable cause to place him under arrest and (2) he is unaware of any facts supporting his conspiracy allegations, defeat Plaintiff's § 1983 claims that the Municipal Defendants falsely imprisoned and conspired to falsely imprison him. *See Kokinda*, 557 F.Supp. 2d at 593 ("Plaintiff's guilty plea to the charge of harassment, and his concession that the arrest for that crime was based on probable cause, defeat his § 1983 claim of false arrest."). As the Court believes that no reasonable jury could find that the Municipal Defendants either falsely imprisoned or conspired to falsely imprison Plaintiff, the Municipal Defendants' motion for summary judgment will be granted with respect to Counts IV and V of Plaintiff's Complaint.

Plaintiff also alleges that the Municipal Defendants used excessive force against him when Defendant Jamie Barrett, an off-duty detective employed by the Municipal Defendants, witnessed Defendant Nathan Barrett, his brother, striking and kicking the Plaintiff. (Doc. 1 ¶¶ 61-65.) As discussed in a prior section of this Memorandum, the Court has found that Defendant Jamie Barrett was not acting under color of state law at the time of the incident between Plaintiff and Nathan Barrett and, therefore, not acting in his capacity as a detective for the City of Scranton Police Department. Moreover, the Plaintiff has made no allegations that Defendant Jamie Barrett or any other member of the Scranton Police Department struck, kicked, or used any kind of force upon Plaintiff at any time during or immediately following the incident between Plaintiff and Nathan Barrett. (*See* Graziosi Dep. Trans. Pt. 1, Doc. 33, Ex. 1, at 77:3-79:15.) The Court, accordingly, finds that no reasonable jury could find that either the City of Scranton or the Scranton Police Department subjected the Plaintiff

13

to any excessive force. Thus, the Court will grant the Municipal Defendants' motion for summary judgment with respect to Counts VIII and IX of Plaintiff's Complaint.

Finally, Plaintiff alleges that the Municipal Defendants' policies, customs or practices resulted in a violation of the rights guaranteed to him by the United States Constitution. "[A] municipality can be found liable under [42 U.S.C.] § 1983 only where the municipality itself causes the constitutional violation at issue." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (citing *Monell v. New York City Dept. of Social Services*, 436 U.S. 658 (1978)); *see accord Montgomery v. DeSimone*, 159 F.3d 120, 126 (3d Cir. 1998) ("Under 42 U.S.C. § 1983, municipal defendants cannot be held liable under a theory of *respondeat superior. . . ."*). The Supreme Court has stated that "a city must exhibit 'deliberate indifference' towards the constitutional rights of persons in its domain before a § 1983 action for 'failure to train' is permissible." *Id.* at 389 n. 7. "Moreover, for liability to attach in this circumstance the identified deficiency in a city's training program must be closely related to the ultimate injury." *Id*. at 391. Furthermore, the Third Circuit Court of Appeals, when discussing *City of Canton*, has stated that "[f]ailure to adequately screen or train municipal employees can ordinarily be considered deliberate indifference only where the failure has caused a pattern of violations." *Berg v. County of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000) (citing *Board of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 408-409 (1997)).

In the current case, the Plaintiff alleges that the Municipal Defendants failed

> to establish, publish, and instill in Police Officers and Detectives the practical meaning of probable cause or reasonable cause for arrests so that officers would not detain and/or arrest citizens based on their hunches, inklings, or mere suspicion and without reasonable probable cause. . .

(Compl., Doc. 1 ¶ 72 (i).) However, as already discussed in this Memorandum, the Court

14

has found that the officers who arrested Plaintiff did, in fact, have probable cause to do so. Plaintiff also alleges that the Municipal Defendants "De-emphasiz[ed] the importance of an arrest warrant issued by a Judge or Magistrate, which would act as a buffer between the citizenry and the Police. . . ." (Compl., Doc. 1 ¶ 72(ii).) The Court, however, observes that the Plaintiff testified in his deposition that he turned himself in to the police after learning that a warrant for his arrest had been signed by Magistrate Kennedy. (Graziosi Dep. Trans. Pt. 2, Doc. 33, Ex. 2, at 139:21-140:10.) Finally, Plaintiff alleges in his Complaint that the Municipal Defendants

> Fail[ed] to take proper corrective and punitive actions against overreaching police officer and creat[ed] the impression that protecting family or friends; in this case, Nathan Barrett or Joyce's Café is paramount and triumphs over constitutional rights in all circumstances.

(Compl., Doc. 1 ¶ 72(iii).) Based upon its review of the various documents presented in conjunction with the current motions for summary judgement, and having paid particular attention to Plaintiff's deposition testimony and Defendants Nathan and Jamie Barrett's testimony at the preliminary hearing in the state criminal case, the Court finds that Plaintiff has educed no evidence that the Municipal Defendants, in any way, engaged in any policy, custom, or pattern of behavior constituting deliberate indifference to citizens' constitutional rights. Since the Plaintiff has failed to produce any facts that would allow a reasonable jury to determine that Plaintiff's injuries were the result of the policies, practices, or custom of either the City of Scranton or the Scranton Police Department, the Court will grant the Municipal Defendants' motion for summary judgment with respect to Count X of Plaintiff's Complaint.

**B.      Plaintiff's State Law Claims**

Plaintiff's Complaint also brings state law claims for assault/battery (Count I) and malicious prosecution (Count II) and civil conspiracy (Count III) against Defendants Nathan and Jamie Barrett, and brings a claim of negligent hiring/supervision (Count XI) against Defendant Joyce's Café. Because the Court will grant summary judgment for each of the federal law claim in this case, it declines continued supplemental jurisdiction over the state law claims. 28 U.S.C. § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . (3) the district court has dismissed all claims over which it has original jurisdiction, . . ."); *see also Tully v. Mott*, 540 F.2d 187, 196 (3d Cir. 1976)(" If it appears that the federal claim [...] could be disposed of on a motion for summary judgment under F.R. Civ. P. 56, then the court should ordinarily refrain from exercising jurisdiction in the absence of extraordinary circumstances."). Accordingly, the Court will dismiss these claims without prejudice.

**CONCLUSION**

Based on its review of the evidence presented in the current case, the Court finds that no reasonable jury could find that Defendant Jamie Barrett was acting under color of law at the time of the incident on December 31, 2005. Since the Plaintiff cannot establish the first essential element of a claim brought pursuant to 42 U.S.C. § 1983 with respect to Counts IV (false arrest/imprisonment), V (conspiracy to falsely arrest/imprison), VIII (excessive force), and IX (conspiracy to use excessive force), the Court will grant Defendant Jamie Barrett's motion for summary judgment with respect to these claims. With respect to Plaintiff's Count VI (malicious prosecution) and VII (conspiracy to maliciously prosecute) claims, the Court does find that Defendant Jamie Barrett acted under color of law when he

16

spoke with other police officers about Plaintiff's criminal prosecution. However, the Court also finds that Plaintiff cannot establish the essential "favorable outcome" element of his malicious prosecution and related conspiracy claims. The Court will, accordingly, grant Defendant Jamie Barrett's motion for summary judgment with respect to Counts VI and VII of Plaintiff's Complaint.

The Court also finds that no reasonable jury could determine that Defendant Nathan Barrett was acting under color of state law at the time of the incident with Plaintiff, and will grant Defendant Nathan Barrett's motion for summary judgment with respect to Counts IV (false arrest/imprisonment), V (conspiracy to falsely arrest/imprison), VI (malicious prosecution) VII (conspiracy to maliciously prosecute), VIII (excessive force), and IX (conspiracy to use excessive force) of Plaintiff's Complaint.

Additionally, the Court finds that no reasonable jury could find that the Municipal Defendants, falsely imprisoned, conspired to falsely imprison, used excessive force, or conspired to use excessive force against Plaintiff. Further, the Court finds that Plaintiff has educed no evidence that the Municipal Defendants in any way, engaged in any policy, custom, or practice constituting deliberate indifference to citizens' constitutional rights. Since the Plaintiff has failed to produce any facts that would allow a reasonable jury find in favor on any of these claims, the Court will grant the City of Scranton and Scranton Police Department's motion for summary judgment with respect to Counts IV (false imprisonment), V (conspiracy to falsely imprison), VIII (excessive force), IX (conspiracy to use excessive force), and X (failure to train/policy/practice/custom) and will dismiss the City of Scranton and the Scranton Police Department from this case.

Finally, the Court will decline supplemental jurisdiction over Plaintiff's remaining state

17

law claims against Defendants Nathan Barrett, Jamie Barrett, and Joyce's Café. These claims will, accordingly, be dismissed without prejudice.

An appropriate Order follows.

| | |
|---|---|
| July 7, 2009 | /s/ A. Richard Caputo |
| Date | A. Richard Caputo |
| | United States District Judge |

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

JOSHUA GRAZIOSI

    Plaintiff,

       v.

JOYCE'S CAFÉ, et al.,

    Defendants.

CIVIL ACTION NO. 3:07-CV-2351

(JUDGE CAPUTO)

## ORDER

**NOW**, this __7th__ day of July, 2009, **IT IS HEREBY ORDERED** that:

(1) Defendant Jamie T. Barrett's Motion for Summary Judgment is **GRANTED** with respect to Counts IV, V, VI, VII, VIII, and IX of Plaintiff's Complaint (Doc. 1);

(2) Defendant Scranton Police Department/City of Scranton's Motion for Summary Judgment (Doc. 32) is **GRANTED** with respect to Counts IV, V, VII, IX, and X of Plaintiff's Complaint (Doc. 1);

(3) Defendant Nathan C. Barrett's Motion for Summary Judgment (Doc. 36) is **GRANTED** with respect to Counts IV, V, VI, VII, VIII, and IX of Plaintiff's Complaint (Doc. 1);

(4) Counts I, II, III and XI of Plaintiff's Complaint (Doc. 1) are **DISMISSED** without prejudice;

(5) The Clerk of the Court is instructed to mark this case **CLOSED**.

                                                    /s/ A. Richard Caputo
                                                  A. Richard Caputo
                                                  United States District Judge